UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CR-20532-PCH

UNITED STATES OF AMERICA

v.

WILLIAM GROSS JR.,

    **Defendant.**
_____/

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, through the undersigned counsel, hereby files its sentencing memorandum in advance of the defendant William Gross Jr.'s April 27, 2022, sentencing. Gross is a distributor of child pornographer who perjured himself at trial, boasted of his sexual exploits with young children, showed no remorse for his actions, and impeded the administration of justice at every step in his prosecution. He should be sentenced accordingly to 252 months' imprisonment, the middle of the Guidelines range.

**I.  BACKGROUND**

On February 16, 2022, a jury found Gross guilty at trial of all seven counts of the Indictment, DE 12, charging him with distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2). DE 71. Each count corresponds to a date between August and November 2020 in which Gross shared an image or video of child pornography (or both) with an undercover FBI agent (UC). *See* DE 12. At trial, the Government showed how Gross and the UC chatted on a mobile application called Kik for a year about their shared sexual interest in children. *See* Presentence Investigation Report, DE 85 ("PSI") ¶¶ 4–8. Gross was an administrator of a Kik group "Family Tabu (no limits)" in which he and other members shared child pornography, and he went by the username "Willg880." *See id.* ¶ 5; GX6 (Kik Chats) at 1, 109. Gross even posted

in the group asking for other groups posting under age-10 material and if anyone had young videos with "screaming and crying." PSI ¶ 5. When Gross and the UC began chatting, the UC portrayed himself as a father willing to make his 11-year-old daughter available for sex. *Id.* ¶ 6.

During the first couple months of Gross's chats with the UC, Gross shared intimate details of his interest and experience in having sex with children. Gross said he was sexually active with family members. *Id.* He shared that he was sexually active with a 14-year-old girl when he was 25; that he used to lick his "little cousin['s]" vagina at night when she was asleep "without her knowing"; and he repeatedly asked for images of the UC's purported 11-year-old daughter, who Gross deemed "not too young." *Id.* When the UC sent pictures of his purported daughter, Gross responded that he "would mess with her" and proposed meeting up with the child—"I am serious all I would want is head and to f*** her." *Id.* Gross asked if the daughter could "handle [his] dick" (which he sent a picture of), if she would "do anal," and if he would have to "wear protection." *Id.*; *see* Ex. 1, Transcript of Feb. 15, 2022, Trial Testimony of William Gross Jr. ("Gross Tr.") at 20 ("Q: Now, Mr. Gross. I'm showing you what's in evidence as Government's Exhibit 9. This is your penis, isn't it?" "A: Yes.").

In August 2020, Gross started sending unsolicited images and videos to the UC of children being sexually abused. For instance, Gross followed his August 10, 2020, message of a video depicting prepubescent females performing oral sex on an erect penis (Count 1) with the explanation, "Sorry I needed somewhere to store these." PSI ¶¶ 8, 13. Around the same time, Gross told the UC that he was second guessing "plans to hang out with [his] best friends daughter" who is "14" because "she doesn't suck good dick. And only wants it in the ass. . . . She loves to f*** big cock up her ass and suck dick not she isn't so good on the dick sucking." *Id.* ¶ 6. Gross

later boasted of having sex with that child, whose father would "be willing to trade" daughters with the UC once Gross made sure the UC's daughter was real: "I came in her ass and her face" and "f***ed her 2 days with a day in-between." *Id.*

Over the next few months, Gross and the UC continued to discuss a meetup with the UC's daughter. Gross said of the UC's daughter that he "want[ed] everything": "Pussy," "anal and mouth. . . . Will she be able to sit on top of me?" GX6 at 92–93.[1] On October 29, 2020, Gross messaged the UC, "send me videos of young f***ing. I don't care the age it can be really young to a little older" before sharing a nearly minute long video of an adult male penetrating the vaginal and rectal area of a child while she performs oral sex on another male (Count 4). PSI ¶¶ 6, 8. Gross also proposed sending the UC money via Cash App if the UC would send sexually explicit videos and images of the daughter, though Gross never followed through with payment. *Id.* ¶ 6.

Kik provided IP addresses used by Willg880, at least three of which were identified with addresses associated with Gross. *See id.* ¶¶ 9–10; GX28. Gross also sent two selfies of himself to the UC and made comments throughout the chats corroborating that he was the one who sent the chats detailed above, including the child pornography at issue. *See id.* ¶ 10; *e.g.*, GX6 at 4, 11.

On October 5, 2021, the FBI arrested Gross outside an efficiency that he was living in with his girlfriend. *See* PSI ¶¶ 16, 49. Gross signed a *Miranda* "Waiver of Rights" form and admitted in a separate signed statement that he communicated with the UC "on and off over a period of several months," sent him "a handful of child pornography images and videos," and looked at

---

[1] "GX" numbers refer to the Government's exhibits from trial filed as exhibits to DE 76.

"pornography of minor children" for "two years. . . . One particular video stands out because a girl that was possibly 7 or 8 was screaming." *Id.* ¶ 16; GX 35; GX37.

But when Gross took the stand at trial, he flatly denied that he initialed the *Miranda* waiver or signed his confession statement, said that his rights were not fully read to him, and claimed he was not the defendant named in the Indictment. *See* Gross Tr. at 7, 9–12; 17–18; *id.* at 12 ("I, the living man William Gross, that is not my signature."); *id.* at 11, 15 (the Court construing Gross's testimony to be that "he's not who he is or his name" and that Gross is "not his real name"). Indeed, as Gross's lies compounded, the Court warned him side-bar about the "the obstruction of justice" enhancement for those misrepresentations. *Id.* at 15; *see id.* at 17 (the Court advising standby counsel to "talk to" Gross about obstruction; "I'm taking notes."). While Gross admitted that each of Willg880's pictures to the UC showed Gross and his surroundings, Gross denied ever being the one to message those pictures to the UC (despite the IP address evidence to the contrary). *See id.* at 20–22 ("Q: Mr. Gross, I'm showing you what's in evidence as Government's Exhibit 6. You are, in fact, WillG880, isn't that correct?" "A: No."). And finally, Gross denied that he sent each and every message shown to him sent by "Willg880"—the same account that distributed the various videos and images of children being sexually abused that are the basis for the Indictment. *Id.* at 22–26. Gross capped off his testimony on re-direct by repeatedly calling the Court "Mr. Huck" and "Mr. Paul C. Huck" before clarifying that "the name on the indictment . . . is not [mine]. My name is not in all capitals. My name consists of upper and lower cases." *Id.* at 26–27.

On rebuttal, the Government called FBI Special Agent Rick Enriquez, who confirmed that he read Gross his *Miranda* rights, made sure that Gross understood each right, and watched Gross sign the *Miranda* waiver. *See* GX35. Gross also signed a statement summarizing his confession

4

to Special Agent Enriquez, GX37.  The signed Statement concluded, "Agent Ricardo Enriquez has been professional and fair to me. . . .  My statement is voluntary. . . .  I have re-read this statement and it is accurate and correct to the best of my knowledge."  *Id.*

Gross's sentencing is scheduled for April 27, 2022.

## II. OBSTRUCTION OF JUSTICE ENHANCEMENT

Gross's perjury at trial justifies the two-level obstruction-of-justice enhancement in Guidelines Section 3C1.1.  *See* USSG § 3C1.1 cmt. n.4(b).  To ensure a complete record, the Government requests that when the Court finds that Gross obstructed justice by perjuring himself, as recommended in the unobjected-to PSI ¶ 22, the Court "address each element of the alleged perjury in a separate and clear finding."  *United States v. Dunnigan*, 507 U.S. 87, 95 (1993); *see United States v. Singh*, 291 F.3d 756, 763 (11th Cir. 2002).  Perjury is when "[a] witness testifying under oath . . . gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory."  *Id. at* 94.  The four elements of perjury are "(1) the testimony must be under oath or affirmation; (2) the testimony must be false; (3) the testimony must be material; and (4) the testimony must be given with the willful intent to provide false testimony and not as a result of mistake, confusion, or faulty memory."  *Singh*, 291 F.3d at 763 n. 4.

First, the Court can easily find Gross's testimony under oath.  *See* Gross Tr. at 1 ("Trial Testimony of William Gross, Jr."); *id.* at 5 ("William Gross, having been duly sworn by the courtroom deputy, testified as follows . . . .").

Second, as detailed above, Gross's testimony was false.  The Government showed Gross multiple exhibits with his signature on it and dozens of pages of his chats with the UC, and he consistently lied that he was never read his rights, did not confess his guilt, and never chatted with

5

the UC. Gross's testimony was expressly contradicted by the testimony of the UC, Special Agent Enriquez, and the various documents and images proving his control of the "Willg880" Kik account. After Gross denied that he is "Willg880," the jury took only 11 minutes to find him guilty on all counts, further evidence that Gross's lies were just that obvious.

Third, his testimony was material. Gross's lies about his signed confession and his chats with the UC cut to the core of this case—Gross's distribution of child pornography as "Willg880" to the UC.

Finally, there was nothing accidental or forgetful about Gross's lies. They continued after his semantic games with the prosecutor on cross-examination about whether he put "pen to paper" (when his signatures on the incriminating exhibits were digital ones); they even continued after the Court expressly warned him about the obstruction of justice enhancement and consequences of his perjury. *Id.* at 15, 17–18. Granted, Gross was honest about some things, mainly that it was him in the various "Willg880" pictures. But that only highlighted his subsequent willful intent to provide false testimony, because Gross knew exactly which answers he could square with innocence and which would render him inescapably guilty in the eyes of the jury. For instance, when the Government asked Gross to admit some *slightly* incriminating facts like whether he used Wifi at his apartment (linked to the "Willg880" IP address) or whether he worked at Wild Fork Foods (linked to another IP address), he said "yes"; otherwise, Gross was all "no"—disclaiming every horrific chat about abusing children that he was asked about. *See id.* at 18–22.

## III.  SENTENCING RECOMMENDATION

Gross has not filed any objections to the PSI, which calculate his Sentencing Guidelines range as 235 to 293 months' imprisonment. PSI ¶ 61; *cf.* Fed. R. Crim. P. 32(i)(3)(A); *United States v. Davis*, 587 F.3d 1300, 1303–04 (11th Cir. 2009) ("Davis was deemed to have admitted,

for sentencing purposes, the facts in the PSI he did not object to clearly and specifically at sentencing."). In addition to the obstruction of justice enhancement, the PSI recommends sentencing enhancements for Gross's use of a computer to share at least 300 images of child pornography depicting the sexual abuse of prepubescent minors and toddlers. *Id.* ¶¶ 26–33. A sentence of 252 months' imprisonment, the middle of Gross's Guidelines range, is "sufficient, but not greater than necessary, to comply with the purposes set forth in" 18 U.S.C. § 3553(a)(2).[2]

First, the Guidelines adequately capture the egregiousness of Gross's conduct. *See id.* §§ 3553(a)(1) and (a)(2)(A). Gross proliferated the sexual abuse of young children, even prepubescent and toddler-age children, on the internet, where they spread unabated by traffickers of child pornography. He showed immense sexual gratification from sharing these videos and images—expressing a particular interest in children "screaming and crying," PSI ¶¶ 5, 16—and he did so without any reservation. Indeed, Gross sent child pornography to the UC and others on the "Family Tabu (no limits)" group *unsolicited*. In return, Gross requested child pornography from them,[3] and he came awfully close to paying for a meet up with the UC for sex with his purported 11-year-old daughter. *See id.* ¶ 6; GX6 at 92–93.

Second, the Court's sentence should protect the public from Gross's crimes. *See* 18 U.S.C. § 3553(a)(2)(C). While Gross has no criminal convictions, his chats make clear that this record is *not* an indication of a clean past. Gross boasted to the UC in detail about sexual

---

[2] The statutory maximum of each of Gross's convicted counts of distributing child pornography is 20 years. 18 U.S.C. § 2252(b)(1). Therefore, to fashion a 252-month sentence, the Court should run the sentence on at least one of the counts consecutive to his sentence on the others.

[3] Law enforcement never recovered child pornography in Gross's possession upon his arrest because Gross wiped clean his old phone that his girlfriend saw him use surreptitiously. *See* PSI ¶ 14; Testimony of Bryan Jordan.

7

conquests with young children, including those in his own family. *See* PSI ¶ 6. He was fired from his job at Wild Fork Foods for sexual harassment. *Id.* ¶ 56. In the end, Gross left no ambiguity about his intentions when discussing the UC's 11-year-old daughter: "*I am serious* all I would want is head and to f*** her." PSI ¶ 6 (emphasis added).

Third, Gross has shown zero remorse for his actions. During his direct examination of himself, Gross focused exclusively on the perceived wrongs of the FBI in executing its search warrants and arrest warrant. *See, e.g.*, Gross Tr. at 6 ("Q: Do I feel like my rights have been violated? A: Yes, I do. All of them. Unlawfully and unconstitutionally"); *id.* at 7 ("I was traumatized. I have never been – I never had a gun ever pulled to me, pointed to my face or my persons, multiple agents, about 20 of them."); *id.* at 8 ("I'll forever be haunted by that moment from that morning. That's all. I can't think of any other questions. It's terrible."). What is "terrible" is Gross's victimization of children. Setting aside that his testimony was factually and legally inaccurate, it was a blatant distraction from that harm to children who will grow up with the constant reminder of their sexual abuse published on the internet. After the jury found Gross guilty on all counts, Gross continued to disclaim responsibility for his actions, focusing on the Government's purported "trespass" and "false imprisonment." *See* DE 80 ("I the living man William Gros Jr an offspring of God Almighty have suffered harm and injuries by ways of: Fraud, False imprisonment, confinement, racketeering, involuntary servitude, coercion, deprivation of religion, deprivation of well-being . . . I the living man do not accept the crime."). Gross even emailed his ex-girlfriend, whose life he ruined with his crimes and decision to go to trial, blaming *her* for Gross's predicament, as if their breakup was a fair excuse for Gross resorting to child pornography. *See* PSI ¶ 14.

Finally, Gross has deliberately impeded the efficient administration of justice at every step in his prosecution. *See* 18 U.S.C. § 3553(a)(2)(A) (reflecting the need for the sentence imposed "to promote respect for the law"). Leading up to trial, Gross filed countless baseless "notices," "affidavits," and "motions" of irrational legal hodgepodge as "the living human being William Gross Jr., authorize representative for fictitious name WILLIAM GROSS JR on paper." DE 47; *see* DE 25–28; DE 35–40; DE 43–47; DE 59; DE 65; DE 67. Not only did Gross call the Court "Mr. Huck" in filings and in front of the jury, he wrote that "Magistrate credibility is in question" and objected to the Court's Article III status. *See* DE 44; DE 65. Leading up to and during trial, Gross refused to meet with or speak to the Government to review discovery or discuss issues to narrow areas of disagreement. He even refused the mail the Government sent to him as his own attorney—discovery and courtesy copies of filings intended to promote his own defense.[4] During trial, Gross refused to respond to the Court when addressing him by his legal name, insisting that he is the "living breathing man William Gross Jr. appearing in propria persona." To be sure, Gross has every right to represent himself. But he has no right to disrespect the Court or the administration of justice. Since trial, Gross has refused to cooperate with the U.S. Probation Office in their preparation of the PSI, *see* PSI ¶ 44, and he has continued to refuse any mail sent to him about his criminal case. The Court should sentence Gross commensurate with the care that he has shown this judicial process from start to finish.

---

[4] The Government has in its possession dozens of packages returned from Gross at the Federal Detention Center labeled "Unclaimed," "Refused," and "Returned" from January 13, 2022, through February 17, 2022.

## IV. CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court sentence the defendant William Gross Jr. to 252 months' imprisonment.

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

By:     */s/ Joseph Egozi*
JOSEPH EGOZI
Assistant United States Attorney
Court ID No. A5502707
99 Northeast 4th Street
Miami, FL 33132-2111
Tel: (305) 961-9050
Joseph.Egozi@usdoj.gov

*/s/ Abbie Waxman*
ABBIE WAXMAN
Assistant United States Attorney
Florida Bar No. 109315
99 Northeast 4th Street
Miami, FL. 33132-2111
Tel: (305) 961-9240
Abbie.Waxman@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed with the Court and delivered to standby counsel of record using CM/ECF this 25th day of April 2022, and that the foregoing will be mailed to the defendant at the following address: William Gross, Jr., Reg. No. 68027-509, FDC Miami, P.O. Box 019120, Miami, FL 33101.

*/s/ Joseph Egozi*
JOSEPH EGOZI
Assistant United States Attorney